IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VERISSIMO TAVARES, | : | |
|     Petitioner, | : | 1:20-cv-0761 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| WARDEN QUAY, | : | |
|     Respondent. | : | |

## **MEMORANDUM**

### **March 4, 2021**

Presently before the Court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Verissimo Tavares ("Tavares"), a federal inmate in the custody of the Federal Bureau of Prisons ("BOP") housed at the United States Penitentiary at Allenwood ("USP-Allenwood"), White Deer, Pennsylvania. He alleges that his due process rights were violated in the context of a disciplinary proceeding. Specifically, he asserts that failure to issue Incident Report 3323799 within twenty-four hours of the incident invalidated the disciplinary proceedings. He also asserts that prison officials issued the incident report for retaliatory reasons. He seeks restoration of his good conduct time ("GCT"), monetary compensation, and expungement of Incident Report 3323799.

The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I. BACKGROUND

### A. BOP Disciplinary Process

The BOP's disciplinary process is fully outlined in Code of Federal Regulations ("C.F.R."), Title 28, Sections 541 through 541.8. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for an initial hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. *Id.* Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. 28 C.F.R. § 541.3. In the event that a matter is referred for a hearing, the Warden is required to give the inmate advance written notice of the charges no less than 24

hours before the DHO hearing and offer the inmate a full time staff member to represent him at the DHO hearing. *Id.* at § 541.8 (c) and (d).

At the DHO hearing, the inmate is "entitled to make a statement and present documentary evidence" and has the right to present documents and submit names of requested witnesses and have them called to testify. *Id.* at § 541.8(f). The DHO shall "call witnesses who have information directly relevant to the charge[s] and who are reasonably available." *Id.* § 541.8(f)(2). The DHO need not call repetitive witnesses or adverse witnesses. *Id.* § 541.8(f)(3). The inmate has the right to be present throughout the DHO hearing except during "DHO deliberations or when [his] presence would jeopardize institution security, at the DHO's discretion." *Id.* § 541.8(e). The DHO must "consider all evidence presented during the hearing." *Id.* § 541.8(f). "The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." *Id.* The DHO has the authority to dismiss any charge, find a prohibited act was committed, and impose available sanctions. *Id.* at § 541.8. The DHO must prepare a record of the proceedings sufficient to document the advisement of inmate rights, DHO's findings, "DHO's decision", specific "evidence relied on by the DHO" and must identify the reasons for the sanctions imposed. *Id.* at § 541.8(f)(2). A copy must be delivered to the inmate. *Id.*

**B.     Incident Report 3323799**

On November 4, 2019, Tavares received Incident Report 3323799, charging him with violations of Prohibited Act Codes 217 – Exchanging Money for Contraband, 299, Disruptive Conduct – High Most Like 296 – Mail Abuse, Disrupt Monitoring.  (Doc. 10-2, p. 12).  The Incident Report contained the following description of the incident:

> Inmate Tavares, Verissimo, Reg. No. 95700-038 was placed on commissary restriction due to DHO sanctions on 9/19/19, expiring 12/17/19.
>
> On 11/04/2019, at 6:00 AM, while monitoring inmate communication I discovered Inmate Tavares, Verissimo, Reg. No. 95700-038 directed funds to be deposited on another inmates [sic] account. Specifically, on 10/28/2019 at 8:51 PM [he] sent a message to [ ][1]at gmail.com, ([ ], listed as a sibling an Inmate Tavares [sic] account) simply writing, [ ] send it there. On 10/29/19 Inmate Tavares writes, put 50 on his sh** and the rest on mine.  On 10/30/19 Inmate Tavares receives a reply of I jus put 50 on homeboys acct and 20 on urs.  TruVIEW review shows Inmate [ ] received $50 from [ ], just as Inmate Tavares directed (Prohibited Act code 217).
>
> On 10/5/19 at 2:23 PM, Inmate Tavares writes I'm trying to go to the store on someone else's account bro, cant [sic] really use mine cause I have no limit left over.  Inmate Tavares writes at 6:06 PM, [ ] send it to that.  Again on 10/14/19 at 8:20 AM, Inmate Tavares writes, [ ] you can put 100 in that name. TRUVIEW shows [ ] ([ ] @gmail.com) sent funds to Inmate [ ] on two occasions. Once on 10/07/19 in the amount of $50, and once on 10/18/19 in the amount of $100.  Directing funds to be placed on another inmates [sic] account is prohibited. This is also clear indication Inmate Tavares is circumventing DHO sanctions designed to deter future misconduct

---

[1] Open brackets indicate text redacted from the Incident Report

>Additionally, on 4/29/19 at 6:36 PM, Inmate Tavares wrote to [ ]@gmail.com, when you get a chance tell judy when is that going to be cause macho has store in the am he trying to make he really needs it bad. [ ]. This number is not listed on Inmate Tavares [sic] account as a contact. TRUVIEW shows this telephone number is only associated with prior ALP Inmate [ ] Reg. No. [ ], since released from custody. Sending messages for another inmate is prohibited.

(*Id.*).

At the time of delivery of the Incident Report, officials advised him of his rights, including his right to remain silent. (*Id.* at p. 14). He indicated he understood his rights, and remarked "I accept these charges." (*Id.*). On November 5, 2019, the UDC referred the Incident Report to the DHO due to the severity of the alleged incidents and advised Tavares of the rights afforded as a result of the DHO referral. (*Id.* at p. 13).

The DHO hearing convened on November 18, 2019. (*Id.* at p. 8). Tavares declined a staff representative, waived his right to call witnesses, expressed an understanding of his rights before the DHO, and denied the charges. (*Id.*). He provided a written statement alleging that the incident report was issued in retaliation by the SIS department. (*Id.*). Tavares cited no procedural issues and offered no additional documentary evidence. (*Id.*).

The DHO found sufficient evidence that Tavares committed the Code 296 violation after considering and relying upon the written incident report, the investigation, the Notice of Discipline Hearing Before the DHO, Inmate Rights at

5

Discipline Hearing, TRULINCS correspondence, and the TRUVIEW Inmate Deposit Report.  (*Id.* at pp. 9, 10).

The finding of guilt resulted in disallowance of 27 days of GCT, 30 days disciplinary segregation, and one year loss of email.  (*Id.* at 10).  The DHO cited the following reasons for imposition of sanctions:  "Tavares' use of his written correspondence privileges (EMAIL) detracted from the intent of the Federal Bureau of Prison's policy on the same.  His behavior in this case circumvented staff's ability to properly monitor his community contacts.  The DHO finds the charge for conde 296 to warrant the Disallowance of Good Conduct Time based on the offense being of a highly aggravated offense which greatly jeopardizes the safety of staff and inmates." (*Id.*).

## II.     **DISCUSSION**

Tavares' claims, that his due process rights were violated in the context of the disciplinary hearing process, and that these violations resulted in a loss of good conduct time, are properly the subject of this habeas petition because it directly impacts the duration of his confinement.  The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.  Federal inmates possess a liberty interest in good conduct time.  *See*

*Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).

When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive certain due process protections: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) the opportunity to call witnesses and present documentary evidence when consistent with institutional and correctional goals; 3) assistance in presenting a defense if the inmate is illiterate; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff*, 418 U.S. at 564.

Where the due process requirements are met, the decision of the hearing examiner will be upheld if there is "some evidence" in the record to support the decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also Young*, 926 F.2d at 1402-03 (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455.

Tavares does not contend that officials denied him any of these rights. He asserts that the proceedings should be invalidated because he did not received notice of the charges within twenty-four hours of the incident. (Doc. 1, p. 2). Admittedly, 28 C.F.R. § 541.5(a), states that an inmate is to "ordinarily receive the incident report within 24 hours of staff becoming aware of [his] involvement in the incident." But the regulations do not mandate such a timeframe and neither does *Wolff*. *See Millhouse v. Warden Lewisburg USP*, 785 F. App'x 931, 934 (3d Cir. 2019); *see also Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013). *Wolff* only requires that an inmate be provided notice of the charges against him 24 hours in advance of the disciplinary hearing. *Id.*; *id.* It is undisputed that he received such notice. There is no merit to this argument.

He also avers that the UDC chairperson misled him into signing the notification of rights form without first obtaining staff representation for him. (Doc. 1, p. 3). Again, Tavares misconstrues his rights. He is entitled to assistance in presenting a defense to disciplinary charges if he is illiterate. He is not. Moreover, he declined the assistance of a staff representative at the UDC level and before the DHO.

It also appears that he is challenging the sufficiency of the evidence in arguing that "[u]sing my email access to communicate with family to send me money is not a prohibited act. BOP allow[s] [an] inmate to use this email to

8

communicate" (Doc. 1, p. 3). In accordance with *Hill*, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56; *see also Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) (noting that the Court "need only find that the [Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause"). In concluding that the greater weight of the evidence supported a finding of guilt, the DHO considered the written incident report, the investigation, the Notice of Discipline Hearing Before the DHO, Inmate Rights at Discipline Hearing, TRULINCS correspondence, and the TRUVIEW Inmate Deposit Report. The DHO's reliance on such documentary evidence supports a conclusion that the decision has some basis in fact and supported by some evidence.

Tavares also claims that prison officials issued the report for retaliatory reasons. Because this claim, as it relates to the loss of his good time credits, affects the duration of his sentence, it is properly raised in his habeas petition.[2] *See Queen v. Miner*, 530 F.3d 253, 255 n. 2 (3d Cir. 2008). However, our determination that there is some evidence to support the DHO's decision negates the claim. *See McGee v. Scism*, 463 F. App'x 61, 64 (3d Cir. 2012) citing *Henderson v. Baird*, 29

---

[2] Conversely, to the extent that he seeks to recover monetary damages associated with his claim of retaliation, the claim is subject to dismissal as it is not properly brought in a habeas petition. *See Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002) ("[W]hen the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, [a civil rights action] is appropriate.").

F.3d 464, 469 (8th Cir.1994) (holding that if a prison disciplinary committee's finding of a violation of prison rules is based on some evidence, that "finding essentially checkmates [a] retaliation claim"). *See also Lasko v. Holt*, 334 F. App'x 474, 477 (3d Cir. 2009) (holding because sufficient evidence supported the DHO's disciplinary determination, the retaliation claim must fail) (citing *Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

## III. CONCLUSION

Based on the foregoing, the petition for writ of habeas corpus will be denied. A separate Order will enter.